May it please the Court, Steve Sadie from the Federal Defender's Office for Mr. Sanchez-Birruetta. This case involves a complex of issues related to plain air and the Supreme Court's opinions in Booker on January 12th and Shepard on March 7th. We are urging the Court to remand with the broad authority to reexamine the case in light of these cases. Mr. Sanchez-Birruetta went to trial on a charge of violation of 8 U.S.C. section 1326 and basically for being found in the United States after deportation. The indictment charged a felony, did not say aggravated felony, and the jury instructions found at page 133 of the excerpt of record simply charged the basic for a two-year max of 1326A, alien presence in the United States after deportation. The defendant did not testify. He received a 94-month sentence. On appeal, he's raised an issue related to fingerprint evidence upon which we'll rely on the briefs. The record does not include the pre-sentence report nor the sentencing transcript. After Booker, this court in Ammaline adopted a general rule for remand except in the rare cases where the evidence is apparently harmless. In this case, we have two strong reasons for remand. One is the enhancement by 16 levels beyond what is arguably a statutory max of two years. The second, and that is why we provided the supplementary material referring to Galvez, Barrios, and Miller, and that is that under the Sixth Amendment construction, the first part of Booker, with the mandatory provisions excised, the court should be free to re-sentence based on the expanded discretion, and the discretion not previously exercised should be exercised. In the Ninth Circuit, we have a very strong tradition in sentencing in the Miller case and the Lopez-Gonzalez case that if there's discretion and the discretion is not exercised, that that itself is basis for a remand, even under pre-guidelines law. This second part... Are you reading Shepard as sufficiently undermining Al-Mandara's choice that we have authority to not follow it? Is that your basic submission? Yes, but not because it overrules Al-Mandara's choice. The key element here is constitutional doubt. In Shepard, the court was construing the Armed Career Criminals Act, and they were trying to decide how narrowly you look at the judicially noticeable facts to decide whether a non-generic burglary statute conviction is generic burglary. They narrowed it very tightly because what they were saying is that to avoid constitutional doubt of Al-Mandara's choice because it has been so left in the dust behind Apprendi, Blakely, and Booker, that we don't want to go there. Here we have a statute that does not say how to plead it or what facts can be considered, and so we are going to construe it in a manner that avoids the constitutional problem. It's the exact same extension. The amended Rule 1326 should be construed to avoid the constitutional doubt. We now know that there's a good six. So construed to say what? Construed to say that since 1326 does not say how you have to plead or prove the B-2 factors and it does not say whether you have to prove it beyond a reasonable doubt to a jury, that you should construe the amended 1326 to require those things because there's just as we did in Buckland. This is a little odd because we're flying blind in the sense that we have no briefs about any of this. So we're getting your argument here for the first time, and therefore we're probably going to slow you down a bit in terms of what the argument is. So this argument that you're making would be – would apply to everything, though. I mean, it's not 1326-specific in any fashion, is it? Oh, I think it is. Why is that? I think there are very few statutes that include the prior convictions and characteristics of prior convictions as factors that increase the statutory maximum. As opposed to the guidelines? Yes. But we know after Booker that the guidelines are the same. So why wouldn't we do the same with the guidelines, then? I think because the structure of this particular case, there are two – you're absolutely right. There's two tracks we're looking at. One is the statutory track where this unquestionably should – from the opinion in Booker that said constitutional doubt applies to the continuing validity of Almendarez-Torres, overruling that part of Almendarez-Torres that said constitutional doubt doesn't apply. So we do have – it's partially overruled to that extent. Therefore, we're looking at what the statute says. What I'm asking you is why would you – why wouldn't the same constitutional doubt considerations, if you read Shepard as broadly as you are, apply to the guidelines, too? I think they should. I think it's in some ways – Well, what argument is there why they weren't? I mean, why would you draw a line like that? What basic – what possibility could there be for drawing such a line after Booker if the same considerations apply with regard to guidelines and statutes for apprentee purposes? Then you have – if there's a constitutional doubt, it's the same constitutional doubt, and the – your argument has to apply to the guidelines, doesn't it? That's absolutely correct. The question would be one of ex post facto, just to make sure that we're keeping things as complex as possible. The – under the mandatory scheme, there's no question that they're identical, that you'd apply the exact same constitutional doubt. And if we're going under Booker I, the first part, it's mandatory, then you've got the identical argument. If we're going to say that, well, we're going to allow you to give him a higher sentence under Booker II, which I don't think is permissible under the ex post facto clause, if that would increase from the maximum, it shouldn't. But I do need to acknowledge that there – that the – under the advisory opinion, I'd have a different argument on guidelines than I do under the statute. But the statute is rock solid at 24 months. If this were to put it another way, that we're not concerned with any Sixth Amendment violation. What we're concerned with is the fact that the sentencing guidelines are mandatory, not compulsory, and therefore your argument is that we should be sending it back to exercise the discretion that's been allowed by it. That is partially correct, Your Honor. But I am maintaining the Sixth Amendment argument also, that it is implicated in two ways. One would be the application of the enhancement with the statute correctly construed. The second would be that the statute providing for the discretion would also be required under the Sixth Amendment. I don't understand the last part. The Booker II is based on needing to construe the statute in a manner that is – comports with the Sixth Amendment. Therefore, to some extent, the argument that there should be at least the possibility of a remand for a lower sentence under the discretionary part would be based – You're saying it has to be decided by a jury? Is that what you're saying? Why would it be a question of the Sixth Amendment? Because the sentence in this case, I believe that Jeopardy attached the jury instructions, which under Taylor, which was reaffirmed in Shepard, says that that's the measure of what elements were proved beyond a reasonable doubt. Jeopardy is attached with the two-year max of 1326A. Basically, this is an argument that's not in the briefs. That is correct. That relies very heavily on Shepard. Yes, it does. And the fact that Shepard, that although we have held and the Court has held that none of all the recent adventures apply to prior convictions, there is an indication in Shepard that that may be not so, at least to the degree of raising the need to construe statutes to avoid constitutional debt. The precedent in this area, I don't think at all should constrain you. And the reason is the citation is to Quintana. Quintana goes back to Pacheco Zepeda. Pacheco Zepeda said – was relying on saying that Alondera's choice no longer is overruled. And the Court said, hey, we're not going to do that. We can't do that. This is an entirely different question, and that is whether the constitutional doubt requires – You're complicating your argument. What you're saying, as I see it, is that because the discretion has not been exercised, we should remand for the Court to exercise it. That's the shortest distance between two points, Your Honor. It sure is. And I'll reserve my remaining time. Thank you. Good morning. May it please the Court. My name is Dave Groff, and I'm appearing for the government today. And I have to admit, as the Court's already acknowledged, the argument this morning is going in a different direction than was anticipated by the briefs. As to the central question that was presented by the briefs, whether or not the district court abused its discretion when it decided to admit fingerprint evidence in this case, the answer, of course, is that it did not abuse its discretion. And as this Court in Hankey noted, a court's decision to admit expert testimony would be reversed only if it was, and I quote, manifestly erroneous. I would suggest that not only was the decision not manifestly erroneous, it was manifestly correct. The Court considered the Daubert factors. Counsel, is there any reason in this decision that anything that we were to say would have any impact on latent fingerprints as opposed to rolled fingerprints? Third Circuit reached the question of latent fingerprints. Actually, they're not involved in this case. There was some testimony taken about that, and there was some at the Daubert hearing, and there was a declaration that there would be a limited opinion. An opinion limited to rolled fingerprints would be entirely appropriate here. That's correct, Your Honor. That's all that was involved in the case below. So that's all that would be necessary to reach in this case. I would suggest also that Daubert hearing, although it seems to be requested or anticipated that if any kind of expert testimony is proffered, that a full-blown contested hearing is necessary, I don't think that's necessarily the case. In fact, the Court of the Eighth Circuit in Crisp recognized that there could be such matters that were so well established that they might even be considered scientific fact. And I would suggest that if you were to look at the Daubert factors, one of them being the widespread admissibility or in general acceptance of something, that in a case like this a judge needn't even conduct such a hearing. In the interest of judicial economy, were a superior court, for instance, to recognize that a particular expert testimony or scientific field had validity and met the Daubert factors, I suggest that would be binding on the inferior courts. And so if a court were to announce that we accept fingerprints. But it's a very strange business, actually, because, as you note, there's an abuse of discretion standard, and there is the suggestion in the case law that this is a case-by-case determination. I mean, I suppose a judge could probably ask for a proof on the record, an offer of proof that there's something more than has been seen in the other cases before he would have a full-blown hearing. But whether he has a hearing or doesn't have a hearing or asks it to be done in the papers, there has to be apparently a case-by-case ruling. Apparently, it would be necessary for the judge to make a finding that the proffered evidence meets the Daubert kind of factors. But that doesn't necessarily suggest that it has to be as a result of a full-blown hearing. And my suggestion is that if the court wanted to, the court could reach a decision that fingerprint evidence on its face is a result of the 100 years of experience. Next week, somebody may do some really amazing study and disprove it all. And that would be properly the subject for a hearing in that case if it was raised that it was somehow novel or unusual. It has always puzzled me about the application of Daubert. It seemed like what the Supreme Court was really trying to do was eliminate junk science. And that before someone was allowed to testify as an expert, there had to be a reasonable modicum of reliability, not just this expert can get up and say something that nobody accepts. And we seem to have now gotten to the stage where even things like fingerprints are subject to being infested. It seems like that's a matter which would be for the jury. If you've got two experts, one says fingerprints are reliable and the other says they're not, if it passes the junk science standpoint, then this would be a jury question. Well, Your Honor, I think that the court puts its finger on the issue from the state and from the government's perspective in this case. I would suggest with all due respect that the Daubert test has been kind of manipulated or misread over time, and that if you take a look at Justice Blackmun's words, he specifically addresses the fact that it's moving from, I would say at that point in time it was less a concern of junk science, but was an issue of moving from what he termed an austere test under the Frye test, which required across-the-board general acceptance, to what he talked about as a more, quote, permissive backdrop under federal rule of evidence 702. So if you look at his wording, he suggests a more open wording, a more open interpretation, more permissive allowance of expert testimony, but then sets up some potential standards that judges might look to as considerations. And right in the text, repeatedly, the court says, this is not intended to be an exhaustive list or intended to be a checklist necessarily. Yet in cases following it, it's used as exactly that, a checklist and a requirement. My suggestion is a fair reading of Daubert is it was intended to give some guidelines for what a district court might do. One of those is broad general admissibility. That suggested might almost trump all of the other concerns. Do you really liberalizing Frye, as you point out? Exactly. That's that's the government's contention. So. So it is a it is asking for quite an extension to apply it in a fingerprint case. And in addition, the judge in this case, as I suggest, in the brief, out of an abundance of caution, nonetheless conducted a hearing, received evidence, took testimony and found that the proffered evidence met the Daubert test. Do you want to address the sentencing argument? I would understand if you didn't. Preliminarily, I would address it. Preliminarily. Well, as as was recited, this case most recently, Shepard on Monday, was cited to the court in a 28 day letter last night. I'd suggest that the court need not address appellants requested extension of Jones and Apprendi to prior criminal histories in this case. The court under Booker, it may be appropriate for a reexamination of the sentence to remand for reexamination in light of the the sort of persuasive nature of the the sentencing guidelines rather than the required application of the sentencing guidelines. But what is the government's position on that? Leaving aside the more elaborate argument, what is your position on the question of simply whether whether if one assumes that there was not a Sixth Amendment violation in this case because Almendaras Torres doesn't, you know, live, what do we do with the fact that we now have discretionary rather than mandatory guidelines? My understanding is we're treating that on a case by case basis. And in some cases where a judge made findings that the sentence was an appropriate sentence and articulated something of that nature at the sentencing, that it would be inappropriate to remand for reexamination because the judge already spoke to that issue. I'm not aware of anything in the record that suggests that kind of a statement in this case. So as to this particular case, the government does not object to reexamination of the sentence. But I don't think that that requires an extension. And I would suggest that the appellant's counsel in this case is asking for quite an extension, considering we're talking about a case that was announced by the Supreme Court on Monday, which it declined to overrule, Almendaras Torres, and was suggesting that on the authority of the 28J letter and an issue that wasn't briefed. Well, Almendaras Torres wasn't really an issue there directly. Well, no, it wasn't, but it was addressed sort of in dicta in the case. And I think that's the reason it was brought up here today. And I certainly am not prepared to fully articulate the government's position on that issue at this stage. I don't think it's necessary to be reached. You don't object to it being remanded for an exercise of discretion. As to this particular case, I do not, Your Honor. Unless there's any other questions. Thank you very much. Thank you. First, on the latter point, the statement in Shepard is certainly not dicta. It's central to the holding of the case that the doctrine of constitutional avoidance was applied. On the fingerprint issue, the question about whether the judge needed to exercise discretion to hold the hearing, I believe that you do need to have such a hearing. And it contradicts the Mitchell case from the Third Circuit, upon which the government's relying, where the judge made a finding by judicial notice regarding a ---- But there is something odd about it, though. You had this hearing, this case. You brought in whatever evidence is around. Next week, someone's going to go to some other judge with the same evidence and do it again. And the next week, they're going to do it again. And what is the point of all this? Well, I guess the point ---- I mean, assuming that you don't prevail here, then what? Your Honor, within the last 12 months, one of my brothers at the bar went to prison, was incarcerated for a period of weeks based on 100% certain fingerprint. I think that any time that the defendant chooses to challenge it based on Kumo and Daubert, that the judge should make a ruling based on those facts. Why doesn't that instead become a jury question? You can have experts on each side testify so long as there's some reasonable basis behind it. What are you saying? Because what Daubert ---- The central holding of my understanding from both Daubert and Kumo, Tyre, is that the court is to act as a gatekeeper function before we get to the jury. Yeah. I think that's right, the gatekeeper function. But that's not deciding finally whether the fingerprint evidence is valid or not. It's a question of gatekeeping, just the same. I think what a party on either side is looking at technical evidence, which fingerprint evidence I believe is, and the party chooses to make a challenge on that basis, is that the district court has to make a decision in the first instance whether it goes to the jury. And the fact that in other cases and other parties that they have not made a sufficient showing should not restrict the authority of the court. But, counsel, there would be a difference, wouldn't there, between a holding that fingerprint evidence in general is not reliable and therefore would never come in and making an argument in this particular case that this particular print is not obtained under reliable circumstances or the expert who evaluated it is not qualified to do so. I guess I'm seeing the adversary system as being based in two parties in two cases, depending on the facts of those cases and the arguments made in a case. Somebody coming in with a very similar case could come in and make an entirely different showing, and if that showing said, wait a second, this is junk science, this is not something that should be permitted, the judge has a duty to stop it at that point and not let the jury perhaps be bamboozled by testimony that wasn't adequately supported. Why is the fingerprint evidence always past the dauber test? It just seems that what you're requesting is that the judge make a decision in each case as to whether or not this particular fingerprint situation should go to the jury. It seems like it's passing the question from the jury, a legitimate jury question on the basis of two experts, to the judge to decide whether or not fingerprint evidence ever would be admitted. At one point folks thought the world was flat, and I just want to make sure that the judge has the decision in the first instance to decide whether we can fight about that. What does flatness have to do with that? I'm not following you. I'm just saying that the gatekeeper function should allow challenges to what may be received as common wisdom at some point. We may be thinking that at this point fingerprints are common wisdom. I think that there's a gatekeeping function that if that common wisdom can be challenged, that the judge has the duty to do that before it gets to the jury. I just think it's a waste of time because there obviously is a whole lot of background for fingerprint evidence, but it may not be always determinative depending upon what the facts of the situation are, what kind of a fingerprint was left, who the expert is testifying about, all that. But that seems to be a jury question. Well, as we set it out in the brief, I believe that there are challenges to each of the five dauber factors in this situation and that we should not be closing the door to future challenges. Okay, you've used your time. Thank you. More than used your time. Thank you very much. Thank you, counsel, and the case is submitted. We will go on to the next case, which is Lee v. Chernyak.
judges: Hug, Berzon, Bybee